**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 17, 2012

No. 11-51180

Lyle W. Cayce
Clerk

In the Matter of:  RONALD CARL MORGAN,

>                                                   Debtor

-------------------------------------------------------------------------

JAMES STUDENSKY,

>                                                   Appellant

v.

RONALD CARL MORGAN,

>                                                   Appellee

Appeal from the United States District Court
for the Western District of Texas
U.S.D.C. No. 6:11-cv-00147

Before JOLLY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This appeal involves the application of a Texas law exemption for the proceeds from the sale of a Texas homestead in a Chapter 7 bankruptcy proceeding.  The Trustee, James Studensky, appeals the order of the district

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-51180

court affirming the final order of the bankruptcy court denying the Trustee's objection to the claim of the Debtor, Ronald Morgan, for an exemption for the value of his Texas homestead.  The district court held that because the Debtor owned his homestead when he filed his bankruptcy petition, the proceeds from the postpetition sale of the homestead were exempt from the bankruptcy estate, even though he did not reinvest them in a new Texas homestead within six months of the sale.  Because the Debtor did not claim an exemption for his homestead until after he sold his home, we reverse the district court's order, render judgment for the Trustee on this issue, and remand this matter to the bankruptcy court for continued proceedings consistent with this decision.

**I.**

Ronald Morgan filed his Chapter 7 bankruptcy petition on July 30, 2010. On August 6, he sold his Texas home, and used the proceeds to pay off a lien on the house held by his brother, Rocky Morgan.  On August 24, Ronald filed the required bankruptcy schedules, listing his home as an asset valued at $100,000 and Rocky's secured claim on the full value of the home, and applied federal exemptions, but did not claim any value of his home as exempt.  The next month, when the Trustee discovered that Ronald had sold his house and paid the proceeds to Rocky, the Trustee contested the validity of Rocky's lien, and demanded that Rocky pay the $100,000 proceeds back to the bankruptcy estate. On February 11, 2011, Ronald filed an amended bankruptcy schedule, now applying Texas state law exemptions, and claimed a $100,000 homestead exemption.   The Trustee objected, and argued that under Texas law, the proceeds from the sale of a homestead are only exempt for six months, and unless they have been reinvested in a new Texas homestead within that time, they cease to be exempt from creditors' claims.  *See* Tex. Prop. Code § 41.001(c). The Trustee contended that since Ronald had not reinvested the proceeds from his homestead sale in a new Texas homestead within the six-month window, the

2

No. 11-51180

proceeds were no longer exempt. The bankruptcy court denied the Trustee's objection and allowed Ronald's homestead exemption. The Trustee appealed to the district court, which affirmed the decision of the bankruptcy court. The district court concluded that at the time he filed his bankruptcy petition, Ronald had a real property interest in his homestead, and not an interest in proceeds from the sale of a homestead. Thus, the district court held, the Texas Constitution exempted his homestead from the bankruptcy estate, and that protection could not be statutorily limited by the six-month protection on the proceeds of a homestead sale. The Trustee timely appealed.

## II.

This court's "[j]urisdiction over bankruptcy cases arises from 28 U.S.C. § 158(d), which grants courts of appeals appellate jurisdiction over 'all final decisions, judgments, orders, and decrees' of bankruptcy judges." *England v. Fed. Deposit Ins. Corp.* (*In re England*), 975 F.2d 1168, 1171 (5th Cir. 1992). "An order that grants or denies an exemption is deemed a final order for the purpose of 28 U.S.C. § 158(d)." *Zibman v. Tow* (*In re Zibman*), 268 F.3d 298, 301 (5th Cir. 2001) (citing *In re England*, 975 F.2d at 1172). "The determination of whether both homestead and proceeds of former homestead are exempt is a question of law, which this Court reviews *de novo*." *In re England*, 975 F.2d at 1172 (citing *Frame v. S-H, Inc.*, 967 F.2d 194, 202 (5th Cir. 1992)).

"Under the Bankruptcy Code, the commencement of a bankruptcy case creates an estate comprising all legal and equitable interests in property (including potentially exempt property) of the debtor as of that date." *In re Zibman*, 268 F.3d at 302 (citing 11 U.S.C. § 541). "The debtor may have certain property exempted from the bankruptcy estate by electing to take advantage of either the federal exemption provisions in the Bankruptcy Code or those provided under state law." *Id.* (citing 11 U.S.C. § 522(b)). As for state-law exemptions, the Code allows for exemption of "any property that is exempt under

No. 11-51180

. . . State or local law that is applicable on the date of the filing of the petition."
11 U.S.C. § 522(b)(3)(A).

Texas protects a debtor's homestead under its constitution and by statute.
The Texas constitution provides that "[t]he homestead of a family, or of a single
adult person, shall be, and is hereby protected from forced sale, for the payment
of all debts"—except for an enumerated list of debts. Tex. Const. art. 16, § 50;
*see In re England*, 975 F.2d at 1172 ("From the beginning of Texas' statehood in
1845, its constitutions have provided homestead protection to its residents.").
This constitutional protection is codified in the Texas Property Code: "A
homestead . . . [is] exempt from seizure for the claims of creditors," with listed
exceptions. Tex. Prop. Code § 41.001(a).

Texas provides additional statutory protection for the proceeds from the
sale of a homestead. Under the Texas Property Code, "[t]he homestead
claimant's proceeds of a sale of a homestead are not subject to seizure for a
creditor's claim for six months after the date of sale." *Id.* § 41.001(c); *see also In
re England*, 975 F.2d at 1173-75 (describing this law as Texas's "proceeds
exemption statute"). "The object of the proceeds exemption statute was *solely* to
allow the claimant to invest the proceeds in another homestead, not to protect
the proceeds, in and of themselves." *In re England*, 975 F.2d at 1174-75.

Ronald argues that at the time he filed his bankruptcy petition, he owned
his homestead, and therefore, the Texas homestead exemption, which has no
temporal limitation—as opposed to the state's proceeds exemption, which is
limited to six months—permanently exempts Ronald's homestead from the
bankruptcy estate. Quoting *Lowe v. Yochem* (*In re Reed*), 184 B.R. 733 (Bankr.
W.D. Tex. 1995), Ronald contends that "a postpetition change in the character
of property properly claimed as exempt will *not* change the status of that
property, relying on the principle that once property is exempt, it is exempt
forever and nothing occurring postpetition can change that fact." *Id.* at 737.

4

No. 11-51180

Thus, it is Ronald's contention that when he filed his bankruptcy petition, he owned a real property interest in his homestead—and not merely proceeds of the sale of his homestead—and therefore, his homestead was forever exempt under article 16, § 50, of the Texas Constitution and Texas Property Code § 41.001(a), regardless of whether he subsequently sold the home before he was discharged in bankruptcy.

The problem with Ronald's argument is that he overlooks the fact that he did not claim a homestead exemption until *after* he sold his home, and even then, he did not claim any value of his home as exempt until he amended his bankruptcy schedules nearly seven months after filing his petition, and more than six months after he had sold his homestead. Our decision in *Hardage v. Herring National Bank*, 837 F.2d 1319 (5th Cir. 1988), explains the flaw in Ronald's argument. There, when the debtor filed his bankruptcy petition, he designated a certain tract as his exempt homestead under Texas law and did not claim any portion of another tract, the Mueller Place, on which he had planted cotton, as exempt. *Id.* at 1321. After the trustee sold the immature cotton and collected the proceeds for the estate, the debtor amended his exemption schedule to claim a further homestead exemption on a portion of the Mueller Place. *Id.* The debtor claimed that this exemption applied to the cotton itself (which, it appeared by then, would be worth more than what the trustee had sold it for). *Id.* at 1321-22. This court explained why the debtor's argument was misplaced:

> [The debtor] . . . misunderstands the effect of his delay in amending his schedule of exemptions. Because [the debtor] had not yet claimed the exemption, the immature Mueller Place cotton was the property of the estate when the bankruptcy trustee sold it to the Bank. 11 U.S.C. §§ 522(b), 541(a)(1). *See Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985). *See generally* 4 *Collier on Bankruptcy* ¶ 541.02[3] (15th ed. 1987). The trustee clearly was empowered to sell the property of the estate. 11 U.S.C. §§ 363(b), (c), 704(1). "Once the property enters the estate, it does not matter whether the property changes form." *Payne*, 775 F.2d at 204 (citing 11 U.S.C.

5

§§ 541(a)(6)).  In *Payne*, for example, the court held that the insurance proceeds from destroyed, unexempted household items, which perhaps originally could have been exempted, were the property of the bankruptcy estate.  Here, once the bankruptcy trustee sold the immature Mueller Place cotton to the Bank, the proceeds of the sale, not the cotton, were the property of the estate.  It is against those proceeds that [the debtor] must make his exemption claim . . . .

*Id.* at 1322-23 (citations omitted).

We find this reasoning especially instructive in deciding this case.  When Ronald filed his bankruptcy petition and did not claim an exemption for his Texas homestead, that property passed by operation of law into the bankruptcy estate.  11 U.S.C. § 541(a); *see In re Zibman*, 268 F.3d at 302 ("Under the Bankruptcy Code, the commencement of a bankruptcy case creates an estate comprising all legal and equitable interests in property (including potentially exempt property) of the debtor as of that date." (citing *Owen v. Owen*, 500 U.S. 305, 308 (1991))).  When he later sold his home, the proceeds of that sale, and not the homestead itself, were the property of the estate.  11 U.S.C. § 541(a)(6).  Thus, when Ronald subsequently amended his exemption schedule in February 2011, it was against *those proceeds* that Ronald had to make his exemption claim.  *See Owen*, 500 U.S. at 308 ("Section 522(b) provides that the debtor may exempt certain property 'from property of the estate'; obviously, then, an interest that is not possessed by the estate cannot be exempted.").

The final question then is whether the proceeds of Ronald's homestead sale, which he sought to exempt from the bankruptcy estate when he filed his amended exemptions in February 2011, were limited by Texas's six-month proceeds exemption statute.  We held in *In re Zibman* that "[t]he Texas statute that provides an exemption for proceeds from the sale of a homestead," Tex. Prop. Code § 41.001(c), "contains a temporal element that explicitly limits the exemption to six months."  268 F.3d at 305.  Thus, as in that case, "[w]hen

No. 11-51180

[Ronald] failed to reinvest the proceeds in another Texas homestead within the statutory time period, those proceeds lost their exemption." *Id.* Therefore, the bankruptcy court erred in denying the Trustee's objection to Ronald's homestead exemption.

The authorities that Ronald cites in support of his case are inapposite because they did not involve a debtor who sold his homestead after filing for bankruptcy but before claiming a homestead exemption. In *In re Reed*, the debtor sold his home *after* he claimed a Texas homestead exemption, 184 B.R. at 735, and therefore, it is inapplicable here, where Ronald sold his home *before* he claimed an exemption on his homestead.[1] Additionally, when this court in *In re Zibman* stated that "[a]ny exemptions claimed . . . are determined by the facts and the law as they exist on the date of filing the bankruptcy petition," 268 F.3d at 302, it did not purport to address the situation we are confronted with here — where Ronald sold his homestead before claiming it as exempt — because there, the debtors had sold their homestead before filing for bankruptcy. Finally, Ronald's reliance on *Lowe v. Sandoval (In re Sandoval)*, 103 F.3d 20 (5th Cir. 1997), is misplaced because we had no occasion in that case to consider the situation presented in this appeal. There, we held that the relevant date for "determination of exemption rights in a conversion of a chapter 13 to a chapter 7" proceeding is "the date of the original bankruptcy petition" (as opposed to the date of conversion). *Id.* at 23. That conclusion involved application of provisions of the Bankruptcy Code that are not at issue in this case. Therefore, none of the

---

[1] The language in *In re Reed* also belies Ronald's argument by indicating that an exemption does not shield property until the debtor has properly claimed the exemption. *See In re Reed*, 184 B.R. at 737 ("*[O]nce property is exempt*, it is exempt forever and nothing occurring postpetition can change that fact." (emphasis added)); *id.* at 738 ("[A] postpetition transformation *of exempt property* into a form of property which would not be exempt under state law does not return the property to the estate." (emphasis added)). Thus, that case does not support Ronald's contention that his exemption claim should apply retroactively to property that was already sold at the time he claimed his exemption.

No. 11-51180

cases that Ronald cites affect our conclusion that when he filed his amended exemption schedule, after selling his homestead, it was against the proceeds of that sale that Ronald had to make his exemption claim, and those proceeds lost their exempt status when he failed to reinvest them in a new Texas homestead within six months.

## III.

For the foregoing reasons, we reverse the district court's decision affirming the bankruptcy court's judgment, render judgment for the Trustee on this issue, and remand this matter to the bankruptcy court for continued proceedings consistent with this decision.

REVERSE, RENDERED, and REMANDED.