**In re Philip SARGENTE and Marlene Sargente, Debtors.**

**Bankruptcy No. 93–10234–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 6, 1996.

Debi Evans Galler, Tabas, Singerman & Freedman, P.A., Miami, FL, for Trustee.

Michael A. Frank, North Miami, FL, for Debtors.

### MEMORANDUM OPINION AND ORDER OVERRULING TRUSTEE'S OBJECTIONS TO PROPERTY CLAIMED AS EXEMPT

ROBERT A. MARK, Bankruptcy Judge.

On July 23, 1996, the Court heard the Trustee's Objections to Property Claimed as Exempt (the "Objections to Exemptions"), filed June 5, 1996. The issue presented is whether equity in property of the estate is determined on the original filing date or on the date of conversion when a Chapter 13 case is converted to Chapter 7.

### BACKGROUND

On January 21, 1993 (the "Filing Date"), the Debtors filed their voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The Debtors listed 2 automobiles on their Schedule B—a 1991 Ford Mustang and a 1987 Subaru XT. There was no equity in either vehicle on the Filing Date. Both cars had liens in excess of their values. On March 17, 1993, the Court confirmed the Debtor's Chapter 13 plan (the "Plan"), which included monthly payments on the Subaru. The Debtors continued making payments on the Mustang outside of the Plan.

Three years later, on March 21, 1996, the Debtors filed their Notice of Conversion and on March 22, 1996, the Court entered its Order converting the case to a case under Chapter 7. At the time of conversion, the Debtors had equity in the automobiles, by virtue of the payments made in and outside of the Chapter 13 plan. The Chapter 7 Trustee claims this equity belongs to the estate. The Debtors claim the estate is only entitled to the equity, if any, at the time they filed their Chapter 13 case three years ago.

### DISCUSSION

The issue is simply stated: Does the petition date or the conversion date control in determining whether there is equity in the vehicles? As explained more fully below, the Court finds that property of the estate and equity in property of the estate is determined on the filing date of the Chapter 13 petition, not on the date of conversion.

### A. The Pre–1994 Split in Authority

Prior to the Bankruptcy Reform Act of 1994 ("Reform Act") a split in authority existed with respect to what is included in property of the estate in a case originally filed as a Chapter 13 and later converted to a Chapter 7. *In re Bobroff,* 766 F.2d 797 (3d Cir.1985) and *In re Lybrook,* 951 F.2d 136 (7th Cir.1991) are often cited for their competing views on the issue prior to the Reform Act.

In *Bobroff,* the court held that the debtor's tort claim, which arose after the debtor filed his petition under Chapter 13, was not property of the estate upon conversion of the case. The court stated the following:

> This result is consonant with the Bankruptcy Code's goal of encouraging the use of debt repayment plans rather than liquidation. If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try would be greatly diminished. Conversely, when chapter 13 does prove to be

unavailing 'no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts....'

*Bobroff,* 766 F.2d at 803–804 [Citations omitted].

In *Lybrook,* the Court held that property inherited 180 days after the debtors filed under Chapter 13 continued to be property of the estate after the debtors converted the case to Chapter 7. The Court reasoned as follows:

[A] rule of once in, always in is necessary to discourage strategic, opportunistic behavior that hurts creditors without advancing any legitimate interest of debtors. A debtor who lacks confidence that he can actually work his way out of a financial hole by payments under Chapter 13 plan will nevertheless have incentive to proceed under that chapter for as long as he can, holding his creditors at bay and thus staving off the evil day when they seize his assets.

*Lybrook,* 951 F.2d at 137.

Prior to 1994, some courts adopted the *Bobroff* rationale. *See In the Matter of Gorski,* 85 B.R. 155 (Bankr.M.D.Fla.1988) (upon conversion from a Chapter 13 to Chapter 7, post-petition wages paid into the Chapter 13 plan did not become part of the Chapter 7 estate); *In re Borrero,* 75 B.R. 141, 142 (Bankr.D.P.R.1987). Other courts agreed with the *Lybrook* decision. *See In re Calder,* 973 F.2d 862, 866 (10th Cir.1992); *See also In re Salamone (Salamone v. Bank of Commerce),* 46 B.R. 19 (Bankr.E.D.N.Y.1984) (where the court held prior to the *Lybrook* decision that, for purposes of § 522(f) lien avoidance, the homestead property claimed as exempt after conversion from Chapter 13 to Chapter 7 should be valued on the conversion date).

**B. Congress Settles the Issue**

On October 22, 1994, Congress settled the split in the case law by amending § 348 of the Code as part of the Bankruptcy Reform Act. The new § 348(f)(1)(A) of the Bankruptcy Code essentially codifies the *Bobroff* holding by providing that upon conversion of a Chapter 13 case,

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of the conversion.

Thus, under the Reform Act, property acquired by the debtor after the filing date is not included as property of the debtor's Chapter 7 estate. In amending § 348, the legislative history and comment to § 348(f) states that Congress "overrules the holding in cases such as *Matter of Lybrook* ... and adopts the reasoning of *In re Bobroff.*" 140 Cong.Rec. H10752–01.

**C. Back to the Future**

Unfortunately, Congress' amendment of § 348 does not apply to this case. The Reform Act bars retroactive application of this provision to bankruptcy cases filed before its enactment. *See* Pub.L. 103–394, § 702, 108 Stat. 4106, 4150. Since this case was filed over a year before the Reform Act became effective, § 348(f)(1)(a) is not controlling. Still, Congress' clarification of the issue is certainly persuasive, and like Congress, this Court chooses to adopt the *Bobroff* rule. Among other things, *Bobroff*'s reasoning properly articulates Congress' intent to continue encouraging debtors to file Chapter 13 cases to partially repay their debts.

The Court finds it unnecessary to engage in a lengthy analysis since the issue is now resolved by statute in all cases filed after October 22, 1994. Other courts have taken the same approach, in particular, the First Circuit in *Young v. Key Bank of Maine (In re Young),* 66 F.3d 376, 378 (1st Cir.1995). Reversing the courts below, *Young* held that postpetition income contributed to the debtors' Chapter 13 estate, prior to the enactment of § 348(f), did not become property of the Chapter 7 estate. In *Young,* the Court

**1026**

recognized the division in authorities regarding the issue it was confronting, and also recognized the fact that Congress had resolved the issue with its amendment of § 348. Noting that the statutory resolution was not applicable to the case before it, the court chose to adopt the *Bobroff* line of cases, reasoning that its holding was consistent with the court's "exposition of discerned congressional intent". *See Id.* at 378. In limiting its discussion of the legal issue, the *Young* court eloquently stated:

> [I]t ill behooves us to play the ostrich, struthiously pretending that the neoteric statute is not now in force. Though the amendment does not affect the outcome of this appeal, it punctuates our opinion and strips it of virtually all precedential value. Where as here, we face a lingering question of law that is defunct except as to a handful of ongoing cases, we see no point in writing at length either to elucidate our rationale or to justify our construction of an ambiguous statute that Congress has lately taken pains to clarify.

66 F.3d at 378.

■ Thus, the Court holds that the Debtors may retain the equity that resulted from paying down their car loans after the Filing Date. To allow this equity to be realized by the Trustee upon conversion of this case to a Chapter 7 three years after they filed the Chapter 13 case would be unfair and contrary to the purpose of encouraging Chapter 13 filings. Whether it be before or after 1994, Congress has always intended to persuade, not dissuade, debtors to use debt repayment plans. Therefore, it is—

**ORDERED** as follows:

1. The equity, if any, in the Debtors' 1991 Ford Mustang and 1987 Subaru XT is determined as of the Filing Date.

2. Since the Debtors had no equity in either the Mustang or the Subaru on the Filing Date, the Trustee's Objection to Exemptions is overruled.